IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIEL R. COOPER, (skype)# 402-216-0770, | ) ) ) | |
| Plaintiff, | ) ) | 4:13CV3086 |
| v. | ) ) | |
| DEPARTMENT OF THE ARMY, SECRETARY OF THE ARMY, John M. McHugh, ATTORNEY GENERAL OF THE UNITED STATES, ERIC HIMPTON HOLDER JR., UNITED STATES ATTORNEY FOR NEBRASKA, and DEBORAH R. GILG, | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE |
| Defendants. | ) | |

On April 19, 2013, Daniel R. Cooper, who is proceeding pro se, filed a complaint against the Department of the Army, Secretary of the Army John M. McHugh, the Attorney General of the United States, Eric Himpton Holder, Jr., the United States Attorney for Nebraska, and Deborah R. Gilg (collectively, "the defendants"). (ECF No. 1.) The defendants have filed a motion to dismiss Cooper's complaint pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1406(a). (ECF No. 17. See also ECF Nos. 18-19.) Cooper has not responded to the defendants' motion. For the following reasons, I find that this action must be transferred to the Eastern District of Virginia.

1

I.  BACKGROUND[1]

Cooper is a civilian employee of the United States Army (the Army). (Def.'s Br., Statement of Facts ¶ 6, ECF No. 18.) The Secretary of the Army is John M. McHugh, (id. ¶ 2), and although the Army is engaged in operations worldwide, its principal place of business is located at the Pentagon in Arlington, Virginia, (id. ¶¶ 3-4).

Cooper began working for the Army on September 29, 2008, as a Food Service Worker, WG-7408-2. (Id. ¶ 7.) For the entirety of his employment, Cooper was stationed at the U.S. Army Garrison (USAG) in Ansbach, Germany. (E.g., id. ¶ 5, 30; see also Defs.' Index, Ex. 2, Bacher-Trum Decl. ¶¶ 7, 9, ECF No. 19-2.)

On September 26, 2011, Cooper suffered an injury while performing his job. (Compl. at 3, ECF No. 1.) He ceased working on September 30, 2011, and entered into the Office of Workers Compensation Program (OWCP). (Id.) In May 2012, Cooper informed his first line supervisor, a Mr. Perry, that he would be ready to return to work in July, and he "would be submitting a request for reasonable accommodation upon [his] return to duty." (Id.)

---

[1] The facts set forth in this section are taken from the complaint and from the defendants's exhibits. (See ECF Nos. 1, 19.) Although I shall resolve all conflicts in the record in Cooper's favor, the allegations in his complaint will be taken to be true only insofar as they are not contradicted by the undisputed evidence submitted by the defendants. See, e.g., Aggarao v. MOL Shop Management Co., Ltd., 675 F.3d 355, 365-66 (4th Cir. 2012) ("On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings. . . . In assessing whether there has been a prima facie venue showing, we view the facts in the light most favorable to the plaintiff." (citations omitted)). See also Murphy v. Schneider National, Inc., 362 F.3d 1133, 1138-40 (9th Cir. 2004); Catipovic v. Turley, No. C 11-3074-MWB, 2012 WL 2089552, at *16 (N.D. Iowa June 8, 2012).

On July 9, 2012, Cooper returned to work and submitted a written request for reasonable accommodations. (Id.) Four managers–specifically, Plans & Operations Division Chief Lockhart-Simpson, Food Program Manager Deese, Supervisory Food Service Assistant Gude, and Food Service Supervisor Perry–responded to Cooper's written request for a reasonable accommodation by issuing a "a new standard operating procedure," or SOP, that was intended to address Cooper's medical limitations. (Id.) Cooper alleges that the SOP conflicted with his doctor's instructions and aggravated his disability, and on July 26, 2012, he made "an amended Request for Reasonable Accommodations in relation to the ineffectiveness of the (SOP)." (Id.) Cooper also told Perry repeatedly that the SOP caused him pain and aggravated his disability. (Id.)

Cooper's complaints were not addressed until August 6, 2012, when he "was temporarily transferred to USAG Ansbach (DES) Vehicle and Firearms Registration Clerk." (Id. at 3.) On October 7, 2012, Cooper was ordered to report back to his Food Service Worker position. (Id. at 4.) Cooper alleges that he was ordered back "after it had been determined by Management, and Human Resources, that [Cooper] would be unable to successfully perform the duties of a Food Service Worker." (Id.) He claims that Alvaro Brown, who was the Deputy Director of Emergency Services at USAG Ansbach, and a Mr. Burgess, who was the Director of Logistics, were responsible for ending Cooper's registration clerk assignment. (Id.)

In addition to the foregoing, Cooper alleges that when he returned to work on July 9, 2012, he was eligible to participate in a "Pipeline Reemployment Program" provided by the Defense Civilian Personnel Advisory Service (DCPAS) Injury and Unemployment Compensation Branch. (Id. at 4.) He states that this program would have given him "a higher probability of . . . successfully completing the duties of a

3

permanent work assignment" after returning to work. (Id.) Cooper alleges, however, that "agency officials" failed to submit his application for entry into this program in retaliation for Cooper's past Equal Employment Opportunity Commission claims "against the management official tasked with performing the duties of generating . . . and submitting the application." (Id. at 5.)

Cooper also alleges that he requested a transfer to the "405th (AFSB) Transportation administrative employment detail" as a reasonable accommodation. (Id. at 5.)[2] Cooper's request was denied, and the transfer was granted to "a healthy white male food service worker" who made the same request. (Id.) Cooper, who is black, (see id. at 19), claims that this white male received unfair preferential treatment and acquired beneficial skills that ought to have been made available to Cooper, (id. at 5-6).

The complaint states that Perry refused to consider Cooper for temporary work leader duties, and thereby prevented him from advancing "in position, pay, or title"; that management refused to compensate Cooper for "performing work leader duties," refused to promote him, retaliated against him, and denied him bonuses and awards; and that Lockhart-Simpson, Cecilia Mendez, and others subjected Cooper to a hostile work environment. (Id. at 6-7.)[3] It also states that Cooper reported his concerns about the Pipeline Program, his job assignments, and his return from leave to Colonel Lawler (the Garrison Commander at USAG Ansbach), but received no response. (Id. at 5.)

---

[2] It is not clear whether Cooper made this request before or after his temporary transfer to the position of Vehicle and Firearms Registration Clerk.

[3] The dates when these acts allegedly occurred are not specified in the complaint.

4

On January 10, 2013, Cooper filed a complaint with the Army's Office of Equal Employment Opportunity alleging "discrimination on the basis of Disability (Physical, Wrist), Race (Black), and Reprisal." (Id. at 11.) According to the Office of Equal Employment Opportunity, Cooper's claims were based on the following allegations:

    a.    On 4 November 2012, [Cooper was] denied traumatic leave because of [his] wrist injury and [was] forced to take sick leave (LS) by Mr. Julian Gude (Supervisory Food Service Assistant, Ansbach 405th);

    b.    On 20 October 2012, [Cooper was] informed by Mr. Michael Perry (Food Service Worker Supervisor, Ansbach 405th) that because of [his] disability [he] would not be placed in the temporary work leader position within the Klatterbach dining facility;

    c.    On 20 October 2012, Food Service workers were issued awards, however [Cooper] did not receive one;

    d.    On 10 July 2012, Mr. Michael Perry (Food Service Worker Supervisor, Ansbach 405th) placed [Cooper] on the same duties within Food Service that caused [his] original injury;

and

    e.    [Cooper was] not offered a permanent reassignment to the USAG Ansbach Vehicle Registration Office in the position of Vehicle Registration Clerk by Mr. Alvaro Brown (USAG Ansbach Deputy Provost Marshal).

(Id.) The Office of Equal Employment Opportunity issued a final decision dismissing Cooper's claims on January 15, 2013, citing Cooper's failure to file a timely formal complaint. (Id. at 11-12.)

On January 17, 2013, Cooper contacted an EEO counselor to make a pre-

5

complaint claim of discrimination based on disability, race, and "reprisal." (Def.'s Br., Statement of Facts ¶ 21, ECF No. 18.) Then on January 20, 2013, he filed a second formal complaint of discrimination. (Id.) On March 5, 2013, the Office of Equal Employment Opportunity (EEO) issued a final decision on Cooper's second complaint. (Id. ¶ 22.) The EEO dismissed several of Cooper's claims, but it accepted three claims "for further investigation." (Defs.' Index, Ex. 1, Ruff-Geppert Decl. ¶ 10, ECF No. 19-1. See also Defs.' Index, Ex. 1, Ruff-Geppert Decl. Attach. B, ECF No. 19-1.) It described the three accepted claims as follows:

a. Between July 9, 2012, and January 14, 2013, Mr. Tim Burgess (Director of Logistics (DOL), Ansbach), Mr. Lockhart Simpson (Plans & Operations Division Chief, Ansbach), Mr. Cardelion Deese (Food Program Manager, Ansbach), Mr. Julian Gude (Food Service Assistant, Ansbach), Ms. Cecilia Mendez (Schweinfurt COPC, OWCP point of contact),COL Kelly J. Lawler (USAG Ansbach Garrison Commander), and COL Christopher J. Roscoe (Commander, 405th Army Field Support Brigade (AFSB)) failed to respond or provide Mr. Cooper with reasonable accommodations, and or, enter Mr. Cooper into the (DSOC) Pipeline Program;

b. Between July 9, 2012, and January 17, 2013, Mr. Tim Burgess (Director of Logistics, Ansbach), Mr. Lockhart Simpson (Plans & Operations Division Chief, Ansbach), Mr. Cardelion Deese (Food Program Manager, Ansbach), and Mr. Julian Gude (Food Service Assistant, Ansbach), did not consider Mr. Cooper for an administrative detail within DOL, whereas a white physically fit food service worker in the same department was reassigned to various administrative details from March of 2012 to present; and

c. On or about January 14, 2013, Mr. Tim Burgess (Director of Logistics, Ansbach), Mr. Lockhart Simpson (Plans & Operations Division Chief, Ansbach), Mr. Cardelion Deese (Food Program Manage[r], Ansbach), and Mr. Michael Perry (Food Service

>    Worker Supervisor, Ansbach) denied Mr. Cooper for the 3rd time
>    the opportunity to perform as acting work leader.

(Defs.' Index, Ex. 1, Ruff-Geppert Decl. ¶ 10, ECF No. 19-1. See also Defs.' Index, Ex. 1, Ruff-Geppert Decl. Attach. B, ECF No. 19-1.) The present status of these three claims is not clear; the parties do not state whether the investigation has been completed or whether the claims have been resolved in a final decision. The complaint merely alleges that Cooper's claims were presented to the EEOC. (Compl. at 9, ECF No. 1.)

The DCPAS Pipeling Reemployment Program, the Food Service Position, and the clerk position in the Vehicle Registration Office were all located at USAG Ansbach, Germany. (Defs.' Index, Ex. 1, Ruff-Geppert Decl. ¶ 11, ECF No. 19-1.) Indeed, all of the allegations raised by Cooper in his EEO complaints (and in the instant lawsuit) concern events that occurred in Ansbach, Germany, and none of the alleged events took place in Nebraska. (E.g., id. ¶ 12.)

The EEO records related to Cooper's EEO complaints (and the instant lawsuit) are maintained and administered by the EEO Office in Ansbach, Germany. (Id. ¶ 13.) The personnel records related to Cooper's employment at USAG Ansbach are administered by the HR Office in Ansbach, Germany, and they are maintained "on a global database." (Defs.' Index, Ex. 2, Bacher-Trum Decl. ¶ 12, ECF No. 19-2.)

The complaint alleges that Perry, Lockhart-Simpson, Deese, Gude, Alvaro Brown, Burgess, Mendez, and Colonel Lawler each took various actions against Cooper in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.; and the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 (No FEAR Act), 5 U.S.C. § 2301 note. (See generally

Compl., ECF No. 1.) None of the aforementioned individuals is located in the District of Nebraska. (Defs.' Index, Ex. 2, Bacher-Trum Decl. ¶¶ 10, ECF No. 19-2.) The complaint includes no allegations that concern the Attorney General of the United States, Eric Himpton Holder, Jr., the United States Attorney for Nebraska, and/or Deborah R. Gilg.[4]

Cooper has been continuously employed by the Army and stationed in Ansbach, Germany, since 2008. (Defs.' Index, Ex. 2, Bacher-Trum Decl. ¶ 9, ECF No. 19-2.) In his complaint, Cooper states that he "claim[s] Nebraska as [his] home of record," and that he is "a resident of Nebraska." (Compl. at 8, ECF No. 1.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) allows parties to raise the defense of improper venue by motion.

In United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947), the Eighth Circuit held that the defendant bears the burden of establishing facts showing improper venue. More recently, the Eighth Circuit signaled in dicta (and without citing Orshek) that the plaintiff bears the burden of establishing facts to support his chosen venue. See Cohen v. Newsweek, Inc., 312 F.2d 76, 78 (8th Cir. 1963). Other judges in the District of Nebraska have adopted the latter view. See, e.g., Gridiron Management Group LLC v. Wranglers, No. 8:12CV3128, 2012 WL 5187839 at *5 (D. Neb. Oct. 18, 2012) (citing Mimum v. Bashir, No. 8:08CV204, 2008 WL 3994878 at *1 (D. Neb. Aug. 25, 2008)). I find, however, that Orshek controls, and

---

[4] I take judicial notice that Eric H. Holder, Jr., is the Attorney General of the United States, and Deborah R. Gilg is the United States Attorney for the District of Nebraska.

therefore the defendants bear the burden of demonstrating that venue is not proper in this district.

If the defendants meet their burden, I may dismiss the action or, in the interests of justice, I may transfer it "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### III.  ANALYSIS

The defendants argue that under 42 U.S.C. § 2000e-5(f)(3), the instant action cannot be brought in the District of Nebraska. (See Def.'s Br. at 9-15, ECF No. 18.) I agree.

Although venue in civil actions is generally governed by 28 U.S.C. § 1391, Title VII includes the following provision:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For the purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3). Thus, in cases brought pursuant to Title VII, venue is controlled by the specific provisions set forth in § 2000e-5(f)(3), as opposed to § 1391. E.g., Brigdon v. Slater, 100 F. Supp. 2d 1162, 1163 (W.D. Mo. 2000) (citing

Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 587-88 (9th Cir. 1991)). See also 28 U.S.C. § 1391(a) (stating that the section applies "[e]xcept as otherwise provided by law"). Section 2000e-5-(f)(3) also governs venue in cases brought under the ADA and the Rehabilitation Act. 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in section[] . . . 2000e-5 . . . of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter . . . ."); 29 U.S.C. § 794a(a)(1). See also, e.g., Johnson v. Deloitte Services, LLP, 939 F. Supp. 2d 1 (D.D.C. 2013).

The complaint alleges that the defendants are liable not only under the ADA and Title VII, but also under the No FEAR Act. (See Compl. at 7, ECF No. 1.) The No FEAR Act "does not create a substantive right for which the government must pay damages, but rather, it requires that federal agencies repay any discrimination or whistleblower damage awards out of agency funds rather than the General Fund of the Treasury." Glaude v. United States, 248 F. App'x 175, 177 (Fed. Cir. 2007). See also Alexidor v. United States Office of Personnel Management, No. 13-CV-4027, 2013 WL 4647528, at *2 (E.D.N.Y. August 29, 2013) (citing cases). Because the No FEAR Act does not provide Cooper with a private right of action, and because Cooper's remaining claims are brought under Title VII and the ADA, I find that venue is governed by the factors set forth in § 2000e-5(f)(3).

As noted above, § 2000e-5(f)(3) lays venue for Cooper's claims a) in any judicial district in the state where the unlawful employment practice is alleged to have been committed; b) in the judicial district in which the employment records relevant to the alleged unlawful employment practice are maintained and administered; or c)

in the judicial district in which Cooper would have worked but for the alleged unlawful employment practice. Section 2000e-5(f)(3) also states that "if the respondent is not found within any such district, [the] action may be brought within the judicial district in which the respondent has his principal office."

The record establishes that none of the alleged unlawful employment practices occurred in the State of Nebraska; rather, they occurred in Asbach, Germany. Also, the evidence submitted by the defendants shows that the relevant records are administered in Ansbach, Germany, and not in the District of Nebraska. Finally, there is no indication that Cooper would have worked in the District of Nebraska but for the alleged unlawful employment practices. Thus, this action may only "be brought within the judicial district in which the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3).[5]

Cooper has named the Army, Secretary of the Army John M. McHugh, the Attorney General of the United States, Eric Himpton Holder, Jr., the United States Attorney for Nebraska, and Deborah R. Gilg as defendants. (See Compl. at 1, ECF No. 1.) As I noted previously, however, the complaint includes no allegations whatsoever concerning these defendants. Moreover, it is well-established that the only proper defendant in an employment discrimination action by a federal government employee is the head of the relevant department, agency, or unit–in this case, the Secretary of the Army. 42 U.S.C. § 2000e-16(c). See also Warren v. Department of the Army, 867 F.2d 1156, 1158 (8th Cir. 1989); 29 U.S.C. §

---

[5] It merits emphasis that Cooper's allegation that he is a Nebraska resident is irrelevant under § 2000e-5(f)(3).

794a(a)(1).[6] I find that for the purposes of § 2000e-5(f)(3), "the respondent" in this action is Secretary of the Army John M. McHugh. The defendants have established that the Army's principal place of business is not located in the District of Nebraska, but rather at the Pentagon in Arlington, Virginia.

In short, I find that the defendants have satisfied their burden of establishing that the District of Nebraska is not a proper venue for Cooper's action.

In accordance with 28 U.S.C. § 1406(a), I must now determine whether Cooper's complaint should be dismissed or, in the interests of justice, transferred to a district in which it could have been brought. The Supreme Court has stated,

---

[6] The ADA prohibits discrimination and retaliation by certain private employers and state and local government employers, but not the federal government. See 42 U.S.C. § 12111(5)(B)(i). See also, e.g., Carroll v. Potter, 163 F. App'x 450 (8th Cir. 2006) ("[W]e agree with the district court that Carroll could not file suit under the ADA to redress alleged discrimination occurring during his tenure as a federal employee."). The Rehabilitation Act does provide a means for federal employees to raise disability-based discrimination claims, however. See Gardner v. Morris, 752 F.2d 1271, 1277 (8th Cir. 1985) ("In 1978, the Rehabilitation Act was amended to provide causes of action to persons subjected to handicap discrimination by the federal government and its agencies."). The Rehabilitation Act specifically incorporates 42 U.S.C. § 2000e-16, which states that "the head of the department, agency, or unit, as appropriate," shall be the named defendant. See 29 U.S.C. § 794a(a)(1). See also Gardner, 752 F.2d at 1278 (stating that the Rehabilitation Act incorporated 42 U.S.C. § 2000e-16 "as the exclusive vehicle for the judicial remedy of claims of discrimination in federal employment").

In construing the complaint liberally to avoid dismissal of Cooper's disability-based discrimination claim, I find that the claim is best analyzed as a Rehabilitation Act claim. It merits mention that this re-characterization has little, if any, impact on the analysis of Cooper's claim. E.g., Nyrop v. Independent School Dist. No. 11, 616 F.3d 728, 733 (8th Cir. 2010) (noting that the same analysis applies to both ADA and Rehabilitation Act claims).

12

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendant or not. The section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years - that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits. When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . "time-consuming and justice-defeating technicalities."

Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962) (footnote omitted).

I note that the Pentagon lies in the Eastern District of Virginia, and I find that Cooper's action could have been brought within that district. In light of the considerations noted by the Court in Heiman, I conclude that in the interests of justice, this action should be transferred to the Eastern District of Virginia.

**IT IS ORDERED** that the defendant's motion to dismiss, or in the alternative, motion to transfer venue, (ECF No. 17), is granted in part. The clerk of the court is directed to transfer this action to the United States District Court for the Eastern District of Virginia.

Dated December 17, 2013.

BY THE COURT

_/s/ Warren K. Urbom_
Warren K. Urbom
United States Senior District Judge